STATE v. SMITH

Defendant entered a plea of guilty to felonious escape. From judgment imposing a prison sentence of two years and recommending Work Release, defendant appealed.

*Robert Morgan, Attorney General, by Christine Y. Denson, Staff Attorney, for the State.*

―――――――

STATE OF NORTH CAROLINA v. CHARLES R. SMITH

No. 6920SC451

(Filed 24 June 1970)

1. Criminal Law § 23— encouragement of guilty plea by State

Although agents of the State cannot produce a plea of guilty by actual or threatened physical harm or by mental coercion which overbears the will of the defendant, it is proper for the State to encourage pleas of guilty at every important step in the criminal process.

2. Criminal Law §§ 23, 135; Constitutional Law § 29; Homicide §§ 13, 31— first degree murder — guilty plea — coercive effect of death penalty

Defendant's otherwise valid plea of guilty of first degree murder was not rendered involuntary by the fact that, at the time it was entered, [former] G.S. 15-162.1 permitted a defendant to escape the possibility of the death penalty for first degree murder by pleading guilty to that charge.

ON certiorari, upon petition by the State, in lieu of appeal, from *Exum, J.,* January 1969 Session of Superior Court of RICHMOND County.

*Robert Morgan, Attorney General, by Dale Shepherd, Staff Attorney, for the State.*

*Norman T. Gibson, for the defendant appellee.*

HEDRICK, J.

On 22 May 1967, the body of James Melton was discovered on an isolated road several miles north of Rockingham, North Carolina. Mr. Melton, a Rockingham taxi driver, had been shot four times with a .32 caliber automatic pistol. Mr. Melton's 1961 model taxicab and some money were missing. The investigation of the murder revealed that Charles R. Smith, a resident of Richmond County, had been seen with the victim earlier in the day and that he was the last person known to have seen the victim alive. During the afternoon of 22 May 1967, Alfred Rush, step-brother of the defendant, reported the disappearance of a pistol from his home and told the officers that the defendant had made statements to him earlier that he needed some money. A bulletin was released for the location of the taxicab and a "wanted for questioning" bulletin was issued for defendant. On the night of 22 May 1967, defendant was captured after he wrecked the taxi attempting to evade a roadblock near Lumberton, North Carolina. He was returned to Rockingham where he was questioned and where he confessed to the murder of James Melton. On 23 May 1967, a warrant for his arrest was issued by W. H. Jackson, Justice of the Peace, charging him with murder. Defendant was indicted at the July 1967 Session of Superior Court of Richmond County for the murder of James Melton.

The defendant informed the court that he was indigent and unable to employ counsel to represent him, whereupon the court, on 25 May 1967, appointed John T. Page, Jr., Attorney at Law, to represent the defendant. On 31 May 1967, the defendant's attorney made a motion praying that the defendant be committed to a State hospital for observation to determine his capacity to stand trial. The motion was granted, and on 1 June 1967, the defendant was transferred to Dorothea Dix Hospital in Raleigh, North Carolina, where he remained until 13 February 1968 when he was pronounced able to plead to the bill of indictment.

Following his return to Richmond County, he entered the following plea of guilty to first degree murder through his attorney:

"The undersigned, Charles R. Smith, the defendant herein, having been arraigned upon a bill of indictment pending in this court charging him with the Felony of Murder in the First

Degree on the 22nd day of May, 1967, and being fully advised by his undersigned counsel John T. Page, Jr., hereby tenders in writing to the State of North Carolina his plea of guilty of Felony of murder in the first degree as charged in the said bill of indictment with full knowledge that in the event of the acceptance of his said plea by the State, with the approval of the court, the legal effect will be the same as a jury verdict of guilty of murder in the first degree with recommendation by the jury in open court that the punishment be imprisonment for life in the State Prison, and that the judgment to be pronounced in the event of such acceptance of his said plea now tendered will be a judgment that he be confined in the State Prison for the full term of his natural life.

"This plea is voluntarily, intelligently and understandingly entered by the undersigned, Charles R. Smith and the said Charles R. Smith is not at the time of entering this plea under the influence of any intoxicating beverages, drugs or medicine and is entirely in possession of all his mental facilities and is entirely normal; no threats, inducements of reward or hope of reward have been made to the undersigned Charles R. Smith and this plea is entirely free and the desire of the defendant, he having reached his own decision without fear and after sufficient consultation with his attorney, to enter said plea.

"This 2nd day of April, 1968.

　　　　　　　　　　　　　　"Charles R. Smith

　　　　　　　　　　　　　　"JOHN T. PAGE, JR.
　　　　　　　　　　　　　　Attorney for Defendant"

The plea was accepted by the Solicitor for the State with the approval of the Judge. The court questioned the defendant in order to determine the voluntariness of the plea. Everette Norton, a Special Agent of the State Bureau of Investigation, testified regarding the voluntariness of the confession given by the defendant on the night of 22 May 1967. He testified that he was present at the sheriff's office when Smith was returned to Rockingham from Lumberton. Mr. Norton stated that the defendant was warned of his constitutional rights and that he then confessed to the murder of James Melton and the theft of twenty dollars from the victim. Defendant told the officers that he took the taxi and drove for several hours and that he pawned the gun for gas at a service station in Fuquay-Varina, North Carolina. The gun was later found in the possession of the operator of the station named by the defendant.

The court then entered its adjudication that the plea of guilty to murder in the first degree was entered intelligently and that "no threats, inducements or hope of reward have been made to the said Charles R. Smith, and that said plea is entirely free and the desire of the defendant and having been reached of his own decision without fear and after sufficient consultation with his attorney." The defendant was sentenced to life imprisonment, began serving his sentence, and on 11 September 1968, filed a petition for mandamus. On 7 October 1968, the Honorable Thomas Seay, Judge of the Superior Court, treating the petition for mandamus as a petition for a post conviction hearing, ordered that the defendant be given a post conviction hearing under G.S. 15-217, and appointed Norman T. Gibson as counsel.

The post conviction hearing was held before the Honorable James G. Exum, Jr., on 10 April 1969. The defendant was present and was represented by counsel. Defendant testified that he had several conversations with Mr. Page, his trial attorney, regarding the case and that after he told Mr. Page what had occurred on 22 May 1967, he decided to enter a plea of guilty to murder in the first degree in order to avoid taking a chance on receiving the death penalty. He stated that he was scared at the time he signed the plea but that he signed it voluntarily and freely.

John T. Page, Jr., defendant's trial attorney, also testified at the hearing. Prior to the original trial Mr. Page talked with the defendant on several occasions and took a detailed statement from him describing the events of 22 May 1967. In his statement to his attorney, he related his activities which led eventually to the murder of James Melton and the theft of the taxicab. He also told him, in detail, his activities following the murder. Mr. Page testified at length as to the circumstances which surrounded the defendant's decision to enter a plea of guilty to murder in the first degree. Mr. Page stated that he was very careful to explain the alternatives involved to his client. During their discussions, the defendant indicated many times that he wanted to get a sentence of twenty-five to thirty years. Mr. Page discussed this with the solicitor but before he could tell his client that the solicitor would only accept a plea of guilty to murder in the first degree, he was called back to the jail by his client who then told him he had decided to enter a plea of guilty to murder in the first degree. Mr. Page testified that the defendant signed the plea voluntarily and that he, Page, believed the defendant was aware of what was happening and understood that the tender of plea meant he would receive a sentence of life imprisonment.

The court, after hearing the evidence, made finding of fact and entered a judgment granting the defendant a new trial, as follows:

"This cause coming on to be heard and being heard on this the 10th day of January, 1969, in the Richmond County Courthouse at a Criminal Session of the Superior Court of Richmond County by the undersigned Presiding Judge of the Superior Court.

"The Petitioner and his Court appointed attorney, Norman Gibson, Esq., were present and each announced that they were ready for this trial. The Solicitor, M. G. Boyette, was present and announced his readiness for this trial.

"The Court finds and determines that this is a proceeding instituted by the petitioner herein under Article 22 of Chapter 15 of the General Statutes known as the Post Conviction Hearing Act by filing a petition herein on the 11th day of September, 1968, and an Amended Petition filed January 14, 1969, and that all contentions listed in the Amended Petition were considered by the court at the hearing, the court having been notified that the Petitioner's counsel would file the Amended Petition at the time of the plenary hearing; that petitioner's Court appointed attorney was appointed on the 7th day of October, 1968.

"The Court finds and determines that the petitioner in his petition, or at this trial after being sworn, testified, or stated and contended in open court that his legal or constitutional rights were denied or violated before, during and after his trial at the April, 1968 Criminal Session of the Superior Court of Richmond County, on a Bill of Indictment bearing Docket No. 8161, in one, or more, or all of the following respects:

"1. That he entered his plea of guilty in order to avoid the death penalty, and that his plea was involuntarily entered and was entered through the coercive effect of the possibility of his receiving the death penalty should he risk a jury trial;

"2. That his plea of guilty is involuntary and coerced;

"3. That his answers to the questions of the court with reference to the voluntariness of his plea were coerced and were not voluntarily made;

"4. That he has a defense to the crime in that he was insane at the time the crime was allegedly committed and remembers no facts with reference to the alleged crime;

"5. That the Court asked the petitioner and his attorney if there were any other contentions of denials or violations of his constitutional or other legal rights, and none other contentions were stated to the court.

"The Court heard the petitioner and his attorney, and heard and considered all the competent evidence offered by the petitioner and the state, and at the conclusion of the evidence, the petitioner, his attorney, and the Solicitor for the State each stated that they had no further or other evidence they desired the Court to consider.

"From a consideration of all of the competent evidence offered, and after hearing and considering the argument of counsel, the Court finds the facts in this case to be as follows:

"1. That the petitioner was tried and pleaded guilty to Murder in the First Degree at the April, 1968 Criminal Session of the Superior Court of Richmond County, on a valid Bill of Indictment bearing Docket No. 8161, charging the petitioner with the felony of Murder in the First Degree, and that said Bill of Indictment had been theretofore at the July, 1967 Criminal Session of the Superior Court of Richmond County returned in open court a true bill by the Grand Jury.

"2. That after said plea of guilty said petitioner was sentenced by the Honorable John D. McConnell, Judge of the Superior Court, who was present and presiding at such session of court to a term of life imprisonment in the State Prison System; that commitment dated the 2nd day of April, 1968, was duly and properly issued and that the petitioner began to serve said sentence, and is now imprisoned thereunder and is serving said sentence in the State Prison System.

"3. That the sentence of life imprisonment is not in excess of that permitted by law.

"4. That before said trial, and on the 25th day of May, 1967, competent counsel, to-wit, John T. Page, Jr., was appointed to represent said petitioner, and did represent said petitioner in an able and diligent manner at said trial, after having had time to prepare, and adequately and properly preparing said case for trial.

"5. That the petitioner expressed to his court appointed counsel his fear of the death penalty and stated that he did not want to take a chance on losing his life, and would enter his plea to avoid that chance.

"6. That the petitioner was committed by order of the court to Dorothea Dix Hospital, Raleigh, N. C., for observation and evaluation and was admitted to the Hospital on June 1, 1967. That the diagnosis made by the Medical Staff of Dorothea Dix Hospital on July 18, 1967 was 'psychotic depressive reaction.' And the Staff of the Hospital found further that the petitioner was at that time unable to plead against the Bill of Indictment, unable to understand the charges against him, and did not know the difference between right and wrong.

"7. That the petitioner remained at Dorothea Dix Hospital where on February 13, 1968 the Medical Staff found that the Petitioner had recovered from his psychotic depressive reaction and was able to plead to the indictment and did know the difference between right and wrong. And the petitioner was thereafter released to the custody of the Sheriff of Richmond County to stand trial.

"8. That the petitioner executed on April 2, 1968 a 'Tender of Plea' in which he recited that his plea was 'voluntarily, intelligently and understandingly entered', that the petitioner was entirely in possession of his mental faculties, and that no threats, inducements or reward of hope have been made, and that the plea was entirely free and the desire of the defendant, he having reached his decision to plead without fear and after sufficient consultation with his attorney, and the petitioner did execute the written tender of plea.

"9. That the petitioner was examined in open court by the Honorable John D. McConnell, Judge Presiding, on April 1, 1968, with regard to the voluntariness of his plea, and Judge McConnell found that the petitioner's plea was entered voluntarily, intelligently and no threats or inducement or hope of reward were made to the petitioner, and that the court thereafter conducted an inquiry to determine the accuracy of the plea and adduced evidence which tended to show that the plea was accurately entered.

"Based upon the foregoing findings of fact the Court is of the opinion and finds and concludes as a matter of law:

"1. That the fear and threat of the imposition of the death penalty should the petitioner stand trial, constituted a coercive effect upon the petitioner sufficient to render his plea involuntary pursuant to the constitution of the United States and the constitution and laws of the State of North Carolina.

"2. That otherwise the court concludes that the petitioner's plea was intelligently and voluntarily entered, and that no coercive influences, inducements, or rewards were made to the petitioner.

"3. That the threat of the imposition of the death penalty standing alone under the facts as found by the court, was sufficient, in this case, to constitute coercion so as to render the petitioner's plea involuntary.

"4. That the petitioner's plea of guilty to Murder in the First Degree to be stricken and the petitioner returned to the custody of the Sheriff of Richmond County there to await a new trial upon the Bill of Indictment, bearing Docket #8161.

"IT IS, THEREFORE, ORDERED, ADJUDGED, AND DECREED and the Court rules and adjudges as follows:

"1. That the petitioner's plea of guilty to Murder in the First Degree entered on the 1st day of April, 1968, in the Superior Court of Richmond County, be and the same is hereby stricken.

"2. That the petitioner be and he is hereby awarded a new trial upon the Bill of Indictment, bearing Docket #8161.

"3. That the petitioner be returned by the State Department of Corrections to the custody of the Sheriff of Richmond County, there to await a new trial and such disposition as may be made at the time of his new trial.

"4. It is further ordered that one copy of this Judgment be forwarded by the Clerk of the Superior Court of Richmond County to the Director of the North Carolina Department of Corrections; the Solicitor of this District; the Attorney General of North Carolina; the petitioner herein; and to Norman Gibson, Esq., petitioner's attorney.

"This 21st day of April, 1969.

"JAMES G. EXUM, JR

Judge Presiding"

Judge Exum's findings of fact do not include a finding that the defendant entered his plea of guilty as a result of his fear of the death penalty. On the contrary, in finding of fact #8 he expressly found that the plea was made while the petitioner was in possession of his mental faculties, that no threats, inducements or reward of hope had been made and that the plea was the desire of the defendant having been made without fear and after sufficient consultation

with his attorney. This finding is in complete accord with the finding made by Judge McConnell at the time the defendant entered his plea.

[2] The defendant contends that *United States v. Jackson,* 390 U.S. 570 (1968), applies to North Carolina procedure and that the death penalty, in conjunction with G.S. 15-162.1, creates a fear and threat of the imposition of the death penalty in a defendant and constitutes a coercive effect upon a defendant sufficient to render any plea he tenders involuntary. The defendant cites the case of *Alford v. North Carolina,* 405 F. 2d 340 (4th Cir. 1968), in support of this proposition.

The United States Supreme Court, in the recent case of *Brady v. United States,* 397 U.S. 742, 25 L. Ed. 2d 747, 90 S. Ct. 1463 (1970), held that *Jackson, supra,* did not render all pleas of guilty entered to avoid the death sentence involuntary *per se.* White, J., speaking for the majority, said:

> "Plainly, it seems to us, *Jackson* ruled neither that all pleas of guilty encouraged by the fear of a possible death sentence are involuntary pleas nor that such encouraged pleas are invalid whether involuntary or not. *Jackson* prohibits the imposition of the death penalty under § 1201(a), but that decision neither fashioned a new standard for judging the validity of guilty pleas nor mandated a new application of the test theretofore fashioned by courts and since reiterated that guilty pleas are valid if both 'voluntary' and 'intelligent.' See *Boykin v. Alabama,* 395 U.S. 238, 242, 23 L Ed 2d 274, 279, 89 S Ct 1709 (1969)."

[1] The Supreme Court went on to state that the plea of guilty is more than merely an admission of past conduct; it is the defendant's consent that a judgment of conviction may be entered against him without a trial. "Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Although agents of the State cannot produce a plea by actual or threatened physical harm or by mental coercion which overbears the will of the defendant, it is proper for the State to encourage pleas of guilty at every important step in the criminal process. "For some people, their breach of a State's law is alone sufficient reason for surrendering themselves and accepting punishment. For others, apprehension and charge, both threatening acts by the Government, jar them into admitting their guilt. In still other cases, the post-indictment accumulation of evidence may con-

vince the defendant and his counsel that a trial is not worth the agony and expense to the defendant and his family." All of these circumstances which produce guilty pleas are valid even though the State has produced the primary factors which encouraged the defendant to enter the plea.

Justice White went on to set out the standard to be used to determine the voluntariness of a defendant's plea. It is:

"The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Fifth Circuit Court of Appeals:

" '[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes).'

"Under this standard, a plea of guilty is not invalid merely because entered to avoid the possibility of a death penalty."

In *Parker v. North Carolina,* 397 U.S. 790, 25 L. Ed. 2d 785, 90 S. Ct. 1458 (1970), a companion case to *Brady, supra,* the defendant asked the Supreme Court to hold his guilty plea involuntary and invalid because it was induced by a North Carolina statute providing a maximum penalty in the event of a plea of guilty lower than the penalty authorized after a guilty verdict and because the plea was the product of a coerced confession. In holding the defendant's plea valid, the Court said:

"It may be that under *United States v. Jackson,* 390 US 570, 20 L Ed 2d 138, 88 S Ct 1209 (1968), it was unconstitutional to impose the death penalty under the statutory framework which existed in North Carolina at the time of Parker's plea. Even so, we determined in *Brady v. United States,* 397 U.S. 742, 25 L Ed 2d 749, 90 S Ct 1463, that an otherwise valid plea is not involuntary because induced by the defendant's desire to limit the possible maximum penalty to less than that authorized if there is a jury trial. In this respect we see nothing to distinguish Parker's case from Brady's."

See also *Garner v. State,* (N.C. App.), filed 27 May 1970.

[2]   Clearly, from the holdings handed down in the three cases

cited above, there was nothing in the present case which would render the guilty plea invalid. Both the trial judge and the judge who heard the defendant's post conviction hearing found as a fact that the plea was entered by the defendant freely and voluntarily and was not the product of either physical or mental coercion.

· The order of Judge Exum striking the plea of guilty and requiring a new trial is reversed. The Superior Court is directed to enter an order remanding petitioner to the custody of the Warden of the State's Prison for the completion of the sentence imposed by Judge McConnell.

Reversed.

MALLARD, C.J., and MORRIS, J., concur.